UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 4:19 CR 494 |
| | ) | |
| Plaintiff | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| vs. | ) | |
| | ) | APPEAL FROM AND OBJECTIONS |
| JUSTIN OLSEN, | ) | TO MAGISTRATE'S ORDER OF |
| | ) | DETENTION |
| Defendant | ) | |

Now comes the Defendant, JUSTIN OLSEN, by and through the undersigned counsel and pursuant to Crim. R. 59 and LCrR 5.3 and hereby appeals from and objects to the Magistrate's Order of Detention entered in 4:19 MJ 6156 on August 16, 2019. (See Order of Detention, August 16, 2019, ECF No. 12) The Magistrate's finding that the evidence elicited at the detention hearing established by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the community if the Defendant is released is factually erroneous. The Magistrate's finding that the factors set forth in 18 U.S.C. 3142G warrant a finding in favor of detention is also erroneous.

At the time of the detention hearing the Defendant was charged by way of a criminal complaint with one count of Threatening to Assault a Federal Law Enforcement Officer in violation of 18 U.S.C. 115(B). (See Complaint, August 12, 2019, ECF No. 1.) Following the detention hearing, the Defendant was indicted for one count of Threatening to Assault a Federal

Law Enforcement Officer in violation of 18 U.S.C. 115(a)(1)(B), (b)(4) and one count of Interstate Communication Threat in violation of Title 18 U.S.C. 875(c). Count One is punishable by a term of up to ten years and Count Two is punishable by a term of up to five years. The applicable guideline for both offenses, which would group pursuant to U.S.S.G 3D1.2, is U.S.S.G. 2A6.1. The Defendant respectfully submits that the highest offense level reasonably arguable pursuant to U.S.S.G. 2A6.1 is 14. The sentencing range for an offense level 14, without acceptance of responsibility, at a criminal history category 1 is 15-21 months.

The investigation in this action began when the FBI office in Anchorage, Alaska learned that multiple posts under the name ArmyofChrist referenced mass shootings, targeting Planned Parenthood and seemed politically motivated. The Federal Bureau of Investigation subsequently learned that the user and IP address relating to the posts in question came back to the Defendant Justin Olsen. When the Defendant was arrested and questioned by law enforcement officers, he admitted to the posts attributed to ArmyofChrist.

On February 14, 2019 FBI Anchorage viewed an ArmyofChrist post of a photograph of a male firing a machine gun with the caption "me walking into the nearest Planned Parenthood", another post relating to socialism stating "I would absolutely die to eradicate socialism and its variants" and a post that he was offered a 4 year ROTC scholarship to UT Austin. (Tr. p.5-6). On March 18, 2019 FBI Anchorage viewed posts made by ArmyofChrist showing an explosion in the background with the caption "me thanking God that they put the gay bar and Planned Parenthood right next to each other", and another post asserting that "bombing Planned Parenthood is noble, as is the killing of abortionists…" The posts did not assert that the Defendant planned to attack Planned Parenthood. From February to his arrest in August, the

Defendant took no steps to damage a Planned Parenthood facility. The eradicate socialism post is simply not a threat and many Americans would agree.

On April 4, 2019 FBI Anchorage viewed posts by ArmyofChrist urging others not to comply with gun laws and to stock up on the stuff they would ban. (Tr. p. 8). On April 9, 2019 FBI Anchorage noted on ArmyofChrist post that "Waco, Ruby Ridge, Vietnam, and Afghanistan are all perfect examples of how easy it is for a small armed resistance to defy the government for a period of time. Hell, even the Oklahoma City bombing shows that armed resistance is a viable method of political change. There is no legal solution." (*Id.*) On June 2, 2019 FBI Anchorage observed an ArmyofChrist post discussing the ATF raid in Waco, Texas ending with "In conclusion, shoot every federal agent in sight." (Tr. p.10). This is the only threat in any ArmyofChrist post to a federal agent. The June 2, 2019 post is the only post arguably containing a threat to a federal law enforcement officer. (Tr. p. 36).

On June 3, 2019, FBI Anchorage observed a post that since Olsen had turned 18, he might purchase an AR-15 kit. An earlier post observed by FBI Anchorage in February 2019 commented that when Olsen reached 500 subscribers he would post a video on "how to make an AR auto sear out of a wire coat hanger." (Tr. P. 7) The Defendant turned 18 on May 17, 2019. (Tr. p. 33). Only the June 2 and June 3, 2019 posts follow the Defendant's 18th birthday. The June 3, 2019 post regarding the potential purchase of an AR-15 kit depicts a retailer's promotional image of such a kit not an actual AR-15 kit. The government presented no evidence that the Defendant ever possessed an AR-15 kit (Tr. p. 37) and there was no follow up investigation to determine whether he had actually purchased such a kit. (*Id.*) At the detention hearing the government presented no evidence that any posts attributable to ArmyofChrist showed the Defendant Justin Olsen in possession of a firearm. Similarly, there was no evidence

3

that the Defendant ever posted a video on how to make an AR-15 auto sear with a coat hanger as promised in February 2019. (Tr. p. 33). There was no evidence that it is possible to make an AR-15 auto sear with a coat hanger.

On or about August 1, 2019, the agent in charge of this investigation sought the assistance of the Boardman Police Department. The Boardman Police obtained an arrest warrant for the Defendant on state Menacing charges and obtained a search warrant for the Defendant's mother's home where the police believed the Defendant resided. The police with FBI assistance executed the search warrant at the Defendant's mother's home and no weapons of any kind were found therein. The Defendant's mother, Melanie Olsen, testified during the detention hearing that there were no guns in her home and that she would not allow guns to be in her home. (Tr. p. 70). While executing the search warrant at Melanie Olsen's home, the Boardman Police and FBI learned that Justin had moved to his father's house a couple weeks prior. (Tr. p. 12).

Justin was observed exiting his father's home and apprehended without incident. The Defendant did not attempt to flee, did not resist or threaten officers, and was polite and cooperative with law enforcement officers. (Tr. p. 24). The Defendant waived his Miranda Rights and agreed to talk to law enforcement officers. He admitted to the posts in question but claimed he was "joking." In response to questions regarding the June 2, 2019 post discussing Waco and ending with "In conclusion shoot all federal agents on sight" Justin told interviewing officers that his statement was a "hyperbolic conclusion based on the results of the Waco siege." (Tr. p. 27). The Defendant consented to a search of his car and his bedroom. (Tr. p. 27). There were no guns, weapons or hate literature located in the Defendant's bedroom at his father's house. There was a machete in the trunk of the motor vehicle the Defendant was driving. Eric Olsen, the Defendant's father, testified that the machete was his and that he had used to it clear

4

brush and left the machete in the trunk of the car which was eventually given to Justin. (Tr. p.60). There was no evidence at the detention hearing that the machete was ever used as a weapon or that any posts displayed or referenced the machete as a weapon. The Magistrate erred in concluding that the machete was evidence of danger to the community.

Upon entering Eric Olsen's residence law enforcement officers observed boxes of ammunition sitting on the stairs. Officer observed a handgun in the living room or family room. (Tr. p. 15, 58). During what police will describe as a protective sweep, law enforcement officers observed ammunition, armored vests, and a gun safe in the closet of the bedroom of Eric Olsen. The gun safe was opened for law enforcement officers by Eric Olsen. (Tr. p. 16). Eric Olsen told law enforcement officers that all firearms, firearms paraphernalia and ammunition were his and that he was a competitive shooter. (Tr. p. 19). Justin had told law enforcement officers that he did not have access to the gun safe and Justin's lack of access was confirmed by his father. (Tr. p. 30). There was a surveillance camera positioned on top of the gun safe (Tr. p. 31) which was motion activated and upon activation sent an alert to Eric Olsen's cell phone. Eric Olsen had never received an alert that his son was attempting to gain access to his gun safe. (Tr. p. 55). The handgun in the living room or family room was Eric Olsen's concealed carry weapon. He had placed it on the shelf that morning before going to school to assume his teaching duties. (Tr. p. 58). Eric Olsen usually puts the gun in his safe but was running late that morning. (Tr. p. 59).

There was no evidence elicited at the detention hearing that the Defendant, Justin Olsen, had taken any steps or action to shoot federal agents. The post about Waco and shooting federal agents was not sent to any identifiable law enforcement officer, was not sent to any identifiable law enforcement office and there was no evidence that any federal law enforcement officer or office had been targeted. The Defendant has no arrest record, no history of violence and does

5

not have a reputation for violence or turbulence. (Tr. p. 41, 42). The Defendant has a stellar school record and did not have a single disciplinary infraction while a student at Boardman High School. (see proffered school records). The Defendant graduated with a 3.8 GPA, was on the tennis team, on three academic teams and participated in science club and French club. (Tr. p. 69). The Defendant was involved in a mentoring program for middle school students and a public service program for individuals suffering from Down Syndrome called "Buddy Up Tennis". (*Id*.) The Magistrate did not give sufficient weight to the Defendant's lack of a criminal record, the Defendant's lack of a history or reputation for violence and turbulence and his positive school and social history. The Magistrate erred in finding that the Defendant had "access to weapons." The uncontradicted testimony at the detention hearing was that the Defendant did not have access to weapons and that all weapons were securely locked in a monitored gun safe, with the exception of Eric Olsen's concealed carry weapon which he inadvertently left on a shelf when he departed for his teaching duties. The Magistrate erred in finding that "body armor" and "go bags" were factors in favor of detention. The body armor belonged to Eric Olsen, was located in Eric Olsen's bedroom closet and there was no testimony whatsoever that the Defendant ever wore or possessed the body armor. The "go bags" referenced by the Magistrate are simply emergency kits in case of a natural disaster and are not evidence of danger to the community. (Tr. p.39). Nothing in the "go bags" posed a danger.

    The Magistrate erred in rejecting the recommendation of pretrial services that the Defendant be released on a $20,000 unsecured bond on the condition that he maintain residence with his mother, Melanie Olsen, that he be prohibited from accessing any online computer service, that he consent, along with his mother, to periodic, unannounced searches and examinations of his home and computer equipment, that he participate in the home incarceration

6

program and that he undergo a psychiatric/mental health evaluation and counseling as directed by pretrial services. Melanie Olsen, a licensed mental health counselor with no criminal history, testified that she would supervise the Defendant if he were released to her custody, that she would take a leave of absence from work, that she would monitor the Defendant's compliance with the conditions of bail and that she would report any violation. (Tr. p. 73, 74). The conditions set forth by pretrial services reasonably assure the safety of the community if the Defendant is released.

WHEREFORE, for good cause shown, the Defendant respectfully requests that this Honorable Court set aside the detention order issued by the Magistrate and order his release on bail pursuant to the conditions set forth by pretrial services.

Respectfully submitted,

/s/J. Gerald Ingram
J. GERALD INGRAM (#0007887)
INGRAM, CASSESE & GRIMM, LLP.
7330 Market Street
Youngstown, Ohio 44512
330/758-2308 (phone) 330/758-8290 (fax)
Attorney for Defendant, Justin Olsen

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of September 2019, a copy of the foregoing Entry of Appearance was electronically filed. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

/s/J. Gerald Ingram
J. GERALD INGRAM (#0007887)